Andrew S. Lewinter (OSB No. 080031)
Andrew Lewinter, Attorney, P.C
132 E.. Broadway, Suite 821
Eugene, OR 97401
andrew@lewinterlaw.com

Alan J. Leiman (OSB No. 980746)
Leiman Law, P.C.
PO Box 5383
Eugene, OR 97405
alan@leimanlaw.com

Edward Choi (OSB No. 135673)
BULLARD LAW
200 SW Market St Ste 1950
Portland, OR 97201
echoi@bullardlaw.com

Anne D. Foster (OSB No. 993152)
Smith Foster King LLP
3412 NW Franklin Ct
Portland, OR 97210
afoster@sfklegal.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| **CODY DWAYNE BARKER, TAMMY MONDELLO, AND CRAIG GEDDIS** **individually** and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>        v.<br><br>**CDR MAGUIRE INC.** a Delaware corporation, and **ELITE SERVICES OF LOUISIANA, LLC**, a Louisiana limited liability company,<br><br>Defendants. | **CASE NO.**: 6:21-cv-01720-AA<br><br>**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## LOCAL RULE 7.1 CERTIFICATION

In accordance with Local Rule 7-1(a), the Parties have conferred about this Motion for Final Approval of Class Action Settlement and it is filed jointly on behalf of Plaintiffs and Defendants pursuant to Section 4.6 of the parties Settlement Agreement (Dkt. 83-4).

## MOTION

Plaintiffs and their counsel move the Court for an Order:

1. Granting final approval of the Settlement and finding that the Settlement is fair, reasonable, and adequate to the members of the Settlement class; and,
2. Approving the Settlement Class consisting of 57 individuals who worked for Defendants on Oregon wildfire recovery projects in 2021;
3. Approving Class Counsel's Motion for Attorney Fees, Costs, and Incentive Awards (Dkt. 86).

This motion is supported by the following Memorandum and the Declarations of Alan J. Leiman and Andrew U. Choi from JND Legal Administration LLC, and the exhibits filed therewith.

////

////

////

////

////

////

# MEMORANDUM

# PROCEDURAL AND FACTUAL HISTORY

## I. LITIGATION, SETTLEMENT, AND PRELIMINARY APPROVAL

In December 2021, Plaintiff Cody Barker filed a collective and class action Complaint in the United States District Court for the District of Oregon, alleging that Defendant CDR Maguire, Inc. ("CDR Maguire") failed to pay him and other similarly situated Health and Safety Officers who worked on Oregon wildfire recovery projects in 2021 the required one-half time overtime premium for workweeks in which it was earned in violation of the Fair Labor Standards Act ("FLSA") and Oregon Wage and Hour Laws. (Dkt. 1.) In April 2022, an Amended Complaint was filed adding two additional named Plaintiffs, adding Defendant Elite Services of Louisiana, LLC ("Elite Services"), and expanding the class of employees seeking overtime compensation to include Arborists and Division Supervisors/Directors. (Dkt. 45.) Defendant CDR Maguire answered the original complaint by denying that Plaintiffs were owed overtime pursuant to the FLSA and Oregon Wage and Hour Laws.[1] (Dkt. 28 ¶ 27.). Defendant CDR Maguire argued that the Arborists, Health and Safety Officers and Division Supervisors/Directors that worked on the Oregon wildfire recovery projects were exempt from overtime. (Id. ¶ 65.). Defendant CDR Maguire maintains that it acted in good faith to comply with the FLSA, that it had reasonable grounds for believing it was in compliance with the FLSA, and that it did not act willfully. (Id. ¶¶ 65, 66, 67.)

---

[1] Defendant Elite Services of Louisiana, LLC did not file and Answer prior to entering into the Settlement Agreement.

Shortly after the action was filed, the parties began exchanging information and discussing settlement. Plaintiffs requested, and Defendant CDR Maguire provided, discovery that addressed the assertion that the putative class members were exempt from overtime because they were paid on a salary basis consistent with 29 CFR § 541.604(b) (potential liability), and the number of current and former employees impacted (scope of settlement class). Plaintiff served discovery requests, and Defendant produced time and pay data for the putative class members. (Leiman Decl. ¶ 2.) Plaintiff requested and received information about Plaintiff's job classifications along with other job classifications that were deployed by CDR Maguire on the wildfire recovery work in order to determine whether there were other putative class members. (Id. ¶ 3.). Plaintiffs obtained daily time records for certain Plaintiffs in order to confirm the accuracy of the data provided by Defendant. (Id. ¶ 4.) The discovery provided adequately demonstrated the size of the class and the alleged amount of unpaid FLSA overtime in dispute relating to Defendants failure to pay the one-half time overtime premium for all hours over 40 hours worked by the Settlement Class members in a seven-day workweek.

In May 2022, the Plaintiffs filed a Motion for Conditional FLSA Class Certification (Dkt. 52) which was granted on June 2, 2022. (Dkt. 58.) As the FLSA Notices went out, the requested discovery came in and was analyzed, and the parties began discussions about engaging a mediator to assist with an effort to resolve the claims. Ultimately the parties decided to negotiate without the assistance of a neutral. (Leiman Decl. ¶ 5.)

By December 2022, the parties had reached agreements in principle relating to settling the FLSA and state overtime claims. (Leiman Decl. ¶ 6.) The original agreement between Plaintiffs and CDR Maguire called for a carve out of the claims for certain employees who were alleged to not have been compensated correctly for daily travel time to and from the worksite (the "Travel

Time" claims.) After obtaining additional data from CDR Maguire and conducting a legal analysis of the facts as applied to the federal Portal-to-Portal Pay Act, Oregon Wage and Hour Laws, and the Oregon Supreme Court's recent ruling in *Buero v. Amazon.com Services, Inc.*, 370 Or. 502 (2022), Plaintiffs negotiated a partial penalty for eleven individuals relating to the Travel Time claims. Class Counsel determined that it was in the best interest of the putative class members to present a complete settlement to the Court, and given the favorable nature of the overtime settlement and the unresolved legal and factual issues around the Travel Time claim, agreed to a global resolution that included the Travel Time claim. (Id. ¶ 7.)

On February 10, 2023 the parties filed their Joint Motion for Preliminary Approval (Dkt. 83.) which the Court granted on April 19, 2023 (Dkt. 84.). The Court preliminarily approved the proposed settlement ("Settlement"). The Court's Order also determined that the Settlement Class satisfied the requirements of FRCP 23, appointed Andrew Lewinter and Alan Leiman as Class Counsel, appointed JND Legal Administration as settlement administrator, approved the Settlement Class Notice and Claim Forms for distribution and required notice of the proposed settlement be emailed and mailed to the Settlement Class Members. (Id.)

The Settlement Class preliminarily certified by the Court consists of fifty-seven (57) individuals. (Declaration of Andrew U. Choi ¶5.) Fifty-two (52) individuals were employed by Defendant CDR Maguire and five (5) by Defendant Elite Services. (Id. ¶¶ 3, 4.) Thirty-eight (38) CDR Maguire current and/or former employees filed timely FLSA Consent to Join forms. Four (4) of the Elite Services employees also filed timely FLSA Consent to Join forms. Of the remaining fifteen (15) Settlement Class members, four (4) returned timely Overtime Claim forms. Of the eleven (11) CDR Maguire Settlement Class members who were also eligible to receive a

partial Oregon wage penalty for travel time, eight (8) returned timely Travel Time Claim forms. (Id. ¶¶ 18, 19.)

The settlement administrator emailed and mailed the Court-approved Notice to the 57 Settlement Class members. (Choi Decl. ¶¶ 6-12.) The Notice contained contact information, including a toll free phone number, for the settlement administrator, and contact information for Class Counsel. (Id. ¶¶ 13, Ex. A.) On June 2, 2023, fifteen (15) days prior to the deadline for class members to object to the Settlement, Plaintiffs filed their Motion for Attorney Fees, Costs, and Incentive Awards (Dkt. 86.) The Settlement Notice specified that a copy of the motion could be obtained from the settlement administrator or Class Counsel. (Choi Decl. Ex. A.)

Adding the four (4) out of the fifteen Settlement Class members who returned Overtime Claim Forms to the thirty-eight (38) Settlement Class Members who filed FLSA Consent to Join forms, the overall participation rate for the overtime claims is forty-two (42) out of a potential fifty-seven (57) individuals, or 73%. Neither the claims administrator, nor Class Counsel received any requests for exclusions from the Settlement, nor were any objections received. (Leiman Decl. ¶ 8); (Choi Decl. ¶¶ 14, 15.)

## **ARGUMENT**

### I. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

In granting preliminary settlement approval, this Court preliminarily approved the proposed settlement as fair, reasonable and adequate. (Dkt. 84.) Since preliminary approval, notice has been distributed with the response rates as set forth above, with zero requests for exclusion and zero objections. The settlement will distribute considerable payments to Settlement Class Members, which represent good and fair value for the claims when compared with the uncertainty and risk of continued litigation. This Court should find, once again, that the Settlement

is fair, adequate, and reasonable and approve the Settlement so that the Settlement Class Members may receive their settlement payments.

### A. The Settlement is Fundamentally Fair, Adequate, and Reasonable

The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement requires this Court to balance several factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, L.L.C. v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004). Additionally, in cases where settlement occurs before formal class certification, courts must consider whether the settlement is a result of collusion among the parties. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). As outlined below, these factors support final approval of the settlement.

#### 1. Strength of Plaintiffs' Case

This factor examines the strength of a plaintiff's case on the merits balanced against the amount offered in the settlement. *Ontiveros v. Zamora*, 303 F.R.D. 356, 369 (E.D. Cal. 2014). But the "fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the task for this court is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Instead, the court may "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ." *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Plaintiffs alleged that Defendants did not pay FLSA and Oregon overtime as a result of the misclassification of Arborists, Health and Safety Officers, and Division Supervisors/Directors as exempt from the overtime provisions of the FLSA and Oregon wage law. Once Plaintiffs were able to establish to Defendant CDR Maguire that the evidence obtained in discovery did not support application of an overtime exemption pursuant to 29 C.F.R. § 541.604(b), and that the putative class members were not otherwise exempt from FLSA and Oregon overtime pay requirements, the settlement was negotiated on the basis that Plaintiffs had a strong case for establishing liability for overtime pay. Assuming liability would be established, the amount of actual overtime wages owed was computed. Defendants asserted that their conduct was in good faith and not willful, and disputed the putative class members' entitlement to FLSA liquidated damages and Oregon wage penalties, and would have sought decertification of any Travel Time class. Thus, even if Plaintiff established liability, and could overcome objections that would bar class treatment, these defenses could greatly reduce the Settlement Class' recovery. Ultimately, the negotiations relating to overtime resulted in a gross recovery of the putative class' actual damages reduced by the "load" of the attorney fees, costs, and incentive awards.

Plaintiffs maintain their strong belief in the merits of the case, and have reached a resolution that recognizes the potential difficulties they would face in continued litigation. Particularly in complex employment class action litigation, voluntary settlement is the preferred means of dispute resolution. *Officers for Justice*, 688 F.2d at 625. While the Court must review the fairness and reasonableness of the settlement, that determination is, ultimately, "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotations omitted). The proposed settlement balances the strengths and weaknesses of the Parties' positions on class treatment, liability, and damages, while providing significant recovery for Settlement Class Members. This factor weighs in favor of settlement approval.

### 2. *Risk, Expense, Complexity and Likely Duration of Further Litigation*

The central consideration for this factor is the expense of litigation. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Generally, "unless

the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.*

Once it became clear that Plaintiffs could likely demonstrate that Settlement Class Members were entitled to be paid the one-half time overtime premium, the settlement value of the overtime case in large part became driven by the issue of whether the putative class members were entitled to FLSA liquidated damages and ORS 652.150 penalty wages. If the parties had not been able to reach a negotiated settlement, there would likely have been a motion for decertification of the FLSA Class, certification of the Rule 23 Class, and likely cross-motions on summary judgment. These litigation steps would have been expensive, complex, and protracted. This settlement avoids these expenditures of resources for all parties and the Court, and provides "significant benefit that [Settlement Class Members] would not receive if the case proceeded—certain and prompt relief." *See Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). This factor supports final approval of the settlement.

### 3. *Risk of Maintaining Class Action Status Through Trial*

Although certification of the FLSA collective class claim was probable as a result of the lack of a valid FLSA overtime exemption, Plaintiffs faced legitimate risk that they would not be able to certify and maintain a Rule 23 Class for the employees who did not file FLSA Consent to Join forms. CDR Maguire was prepared to litigate on the merits certification of any Travel Time subclass. The most obvious risk Plaintiff faced was whether a Rule 23 class would be certified at all. Even assuming Plaintiff prevailed on class certification, Plaintiff still faced the possibility of decertification motions and whether Oregon rules relating to pre-conditions for class treatment applied and precluded class treatment of the Oregon wage penalty claims.

Even if Plaintiffs had achieved and maintained the FLSA collective class and an Oregon Rule 23 state law class through trial, they still would have faced the risk that the matter would be decertified. Under Rule 23, a court may revisit class certification at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment"); Fed. R. Civ. P. 23(c)(1) advisory committee's notes

to 2003 amendment ("A determination of liability after certification, however, may show a need to amend the class definition. Decertification may be warranted after further proceedings."). As a result, it is possible that any state law classes could have been decertified or modified before the conclusion of trial. *Mazzei v. Money Store*, 2016 WL 3876518, at *3 (2d Cir. July 15, 2016) (affirming decertification of Rule 23 class following jury verdict).

Plaintiffs recognize the multiple risks in proceeding with the litigation. Resolving the case now guarantees recovery for the participating and non-participating Settlement Class members, and weighs in favor of approving the settlement.

### 4. *Amount of Settlement Offered*

When considering the fairness and adequacy of a settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Ontiveros*, 303 F.R.D. at 370 (quoting *DIRECTV,* 221 F.R.D. at 527) (internal quotations omitted). "It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.*

Here, with no reversion and automatic participation for the Settlement Class Members who had filed timely FLSA Consent to Join forms, the proposed Settlement provides One Million Eight Hundred Sixty-one Thousand and One Hundred Fifteen Dollars ($1,861,115) (exclusive of attorneys' fees, costs, and incentive payments pending approval by the Court) to be distributed to the participating and non-participating Settlement Class Members. The Settlement provides for gross recovery of maximum trial overtime damages reduced by attorney fees, costs, and the incentive awards.

The forty-two (42) Settlement Class Members who filed timely FLSA Consent to Join forms will receive their actual unpaid overtime pay, together with a proportionate share of FLSA liquidated damages and an Oregon wage penalty from which attorney fees, costs, and incentive payments will be paid. The four (4) Settlement Class Members who did not file FLSA Consent to Join forms, but who filed timely Overtime Claim Forms, will receive their actual unpaid overtime

and a proportionate share of an Oregon wage penalty from which attorney fees, costs, and incentive payments will be paid. The eleven (11) Settlement Class Members who did not exclude themselves from the Settlement or return an Overtime Claim Form will receive a gross payment of $750.

The Settlement provides a fair recovery. The actual amount of overtime at issue for the fifty-seven (57) Settlement Class Members ranged from $2,355 to $102,176 (Dkt. 83-4.) There were zero objections to the settlement, and zero opt-outs, confirming that the settlement amount is fair and adequate. *See Barbosa*, 297 F.R.D. at 447 (noting that the lack of objections and single request to opt-out of agreement showed class member support of settlement). As such, this factor supports approving the proposed settlement.

### 5. *Extent of Discovery Completed and Stage of Proceedings*

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. Formal discovery is not required prior to a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239–40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). The Court and the parties may also rely on discovery developed in prior or related proceedings. *Linney*, 151 F.3d at 1239–40.

The Parties obtained sufficient discovery to assess the claims and defenses in this case. The FLSA and Oregon overtime violations at issue were whether certain job classifications that Defendants employed on Oregon wildfire recovery projects were exempt from overtime. The documentation Plaintiffs obtained from CDR Maguire was sufficient to demonstrate the validity of Plaintiffs' overtime claims. Defendant Elite Services deployed a total of five (5) Arborists who worked under the supervision of CDR Maguire and also provided time and pay data for these Settlement Class Members. Initially, the parties reached a settlement agreement that called for preservation of the Travel Time claim in contemplation that the parties would continue to litigate that claim while resolving the overtime claims with a settlement. With the goal of achieving a global settlement, Plaintiffs obtained additional discovery regarding the Travel Time claim and

after analyzing and weighing the risks and benefits of continuing to litigate that claim, determined that inclusion of that claim in the Settlement was in the best interest of the Settlement Class Members. (Leiman Dec. ¶ 7.).

The Parties' cooperative exchanges of information that took place during the course of the negotiations assured there was more than adequate information for the Parties to understand their cases and reach a reasonable settlement. This supports the finding that the settlement is fair and adequate.

### 6. *Experience and Views of Counsel*

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528 (internal citations and quotations omitted). Absent fraud or collusions, courts can, "and should, rely upon the judgment of experienced counsel for the parties," when assessing a settlement's fairness and reasonableness. *Barbosa*, 297 F.R.D. at 447 (citing *DIRECTV*, 221 F.R.D. at 528.)

Class Counsel's experience is outlined in Plaintiff's Motion for Attorneys' Fees, Incentive Award and Settlement Administration Costs (Dkt. 84.) As noted there, Class Counsel have extensive experience in wage and hour litigation. Counsel for all parties agree that the settlement is fundamentally fair, adequate, and reasonable. This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of Plaintiffs and Defendants, after thorough factual and legal investigation. This factor weighs in favor holding the settlement is fair and reasonable.

### 7. *Presence of a Government Participant*

No government entity participated in this case. Notices were provided to the appropriate federal and state officials pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. The parties did not receive any objections from any federal or state official or entity.

### 8. *Reaction of the Settlement Class Members to the Proposed Settlement*

The reaction of the settlement class strongly supports approval. Of the fifty-seven (57) Settlement Notice Packets that were emailed or mailed to Settlement Class Members, no one objected and no one sought to exclude themselves from the Settlement. The forty-two (42) Settlement Class Members who had returned timely FLSA Consent to Join Forms did not have to respond in order to receive their award. Overtime Claim Forms were received from four (4) of the fifteen (15) Settlement Class Members who needed to return the form (27%.) Of the eleven (11) individuals eligible to receive the Travel Time award, eight (8) returned timely Travel Time Claim Forms (73%.) This high rate of participation, when combined with the lack of any objections to the settlement agreement, weighs heavily in favor of final approval. *DIRECTV*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.")

### 9. *Evidence of Collusion*

Courts considering a pre-class certification settlement must examine whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *Bellinghausen*, 306 F.R.D. at 258. The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; and (3) when the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Id.* (citing in *In re Bluetooth*, 654 F.3d at 947).

First, the settlement is a common fund with no reversion to Defendants. Regardless of participation, Defendants will fund the gross settlement amounts set forth in the Settlement. If the Court approves, Class Counsel will receive 33.34% of gross Settlement amount along with costs and settlement administration fees. The gross recoveries of the Settlement Class Members are based on 100% of their actual overtime damages, with the "load" of attorney fees, settlement

administration costs, and incentive awards coming out of liquidated damages and Oregon wage penalties.

Second, the fact that the Parties agreed to a "clear sailing" provision where Defendant would not object to the Class Counsel's request for attorneys' fees does not warrant denying final approval. *See Deaver v. Compass Bank,* 2015 WL 8526982 at *9 (N.D. Cal. Dec. 11, 2015) (approving settlement despite presence of "clear sailing" term in settlement agreement).

Third, there is no reversion. Any benefit from non-participation will be re-distributed to the participating Settlement Class Members. The fact that Settlement Class Members gross overtime recoveries are based on their maximum trial damages exclusive of attorney fees and costs, is strong evidence that the negotiations which took place over several months were arms-length and not collusive.

## II. THE SETTLEMENT CLASS.

The Court previously granted preliminary approval that for settlement purposes the Settlement Class satisfied the requirements of FRCP 23. (Dkt. 84.) For the same reasons provided in the Parties Joint Motion for Preliminary Approval (Dkt. 83.), and as set forth herein, the Court should reconfirm that the Settlement meets the requirements of Rule 23.

## CONCLUSION

This settlement is the product of an arms-length negotiation between the Parties and their counsel, which resolves a *bona fide* dispute over alleged unpaid overtime wages and penalty wages. The settlement is fair, reasonable and adequate, and provides Settlement Class Members with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court approve of the Parties' settlement agreement, and enter the Parties' proposed Order providing for: (1) final approval of the settlement as fair, reasonable, and adequate as to the members of the Rule 23 Settlement Class; (2) approval that the Settlement Class meets FRCP 23 requirements ; and (3) approval of Class Counsel's Motion for Attorneys' Fees, Incentive Award, and Costs of Settlement Administration (Dkt. 86.)

Respectfully submitted,

DATED: June 23, 2023

/s Alan J. Leiman
Alan J. Leiman
E-mail: alan@leimanlaw.com
Oregon State Bar No.: 980746
PO Box 5383
Eugene, OR 97405
Telephone: (541) 345-2376
Of Attorneys for Plaintiffs

/s Andrew S. Lewinter
Andrew S. Lewinter
E-mail: andrew@lewinterlaw.com
Oregon State Bar No.: 080031
132 E. Broadway, Ste 821
Eugene, OR 97401
Telephone: (541) 686-4900
Of Attorneys for Plaintiffs

/s Edward Choi
Edward Choi
Email: echoi@bullardlaw.com
Oregon State Bar No. 135673
Bullard Law
200 SW Market St, Ste 1950
Portland, OR 97201
Telephone: (503) 248-1134
Of Attorneys for Defendant CDR Maguire, Inc.

/s Anne D. Foster
Anne D. Foster
Email: afoster@sfklegal.com
Oregon State Bar No. 993152
Smith Foster King LLP
3412 NW Franklin Ct
Portland, OR 97210
Telephone: (503) 567-7006
Of Attorneys for Defendant Elite Services of Louisiana, LLC